UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | No.: 14-86 |
| MARLON BARNES | SECTION: "J" (1) |

## ORDER & REASONS

Before the Court is a *Motion for Compassionate Release* **(Rec. Doc. 496)** filed by Defendant, Marlon Barnes, and an opposition thereto (Rec. Doc. 514) filed by the Government. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that Defendant's motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

On May 28, 2015 Defendant was sentenced by this Court to 140 months imprisonment after pleading guilty to conspiracy to distribute over one kilogram of heroin. (Rec. Doc. 280). Prior to his sentencing, the Court received a Pre-Sentence Report ("PSR") prepared by the United States Probation Office. (Rec. Doc. 259). The PSR included Defendant's criminal history.

The instant drug conviction is Defendant's second federal offense. On February 17, 2002, he was convicted of possession of a firearm by a convicted felon. *Id.* at 97. After serving his term of imprisonment for the firearm offense, Defendant violated his supervised release by engaging in the unlawful transfer of firearms and

aggravated assault. *Id.* This violation of his supervised release resulted in another 24 months of imprisonment for Defendant.

In addition to his two federal offences, Defendant has six prior state court convictions as adult. *Id.* at 92-98. These convictions are for committing battery against a policy officer, possession of crack cocaine, unauthorized use of a motor vehicle, and three incidents of possession of marijuana. *Id.* In addition to his convictions, Defendant's PSR details eight other prior arrests. *Id*. at 102-109.

Defendant is currently incarcerated at Oakdale I FCI ("Oakdale") with a projected released date of May 18, 2024. On May 22, 2020, the Court received Defendant's present motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A).

According to the BOP, at least ten Oakdale inmates have died from Covid-19 complications. (Rec. Doc. 514 at 6). Defendant asserts that he has underlying health conditions, notably high cholesterol, liver disease, Hepatitis-C, high blood pressure, and a bullet wound in his lung, that place him at a higher risk for Covid-19 complications. (Rec. Doc. 496 at 2). Defendant cites the prevalence of Covid-19 at Oakdale, as well as his underlying medical conditions, as the primary grounds for his compassionate release.

## **DISCUSSION**

As an antecedent matter, it is undisputed that Defendant's request to the warden of Oakdale, combined with the wardens response denying Defendant's

request, has satisfied the procedural requirements of bringing a compassionate release motion on his own behalf. § 3582(c)(1)(A).

Because Defendant's motion for compassionate release is properly before the Court, the Court must determine whether Defendant has met his burden of proving he is entitled to a sentence reduction under § 3582(c)(1)(A). *See United States v. Jones,* 836 F.3d 896, 899 (8th Cir. 2016) (the movant bears the burden of proving he is entitled to a sentence reduction). A defendant seeking a sentence reduction must establish that "extraordinary and compelling reasons warrant the reduction" and "[he] is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13. These requirements derive from the Sentencing Commission's Policy Statement ("Policy Statement") on sentencing reductions under § 3582(c)(1)(A).

The Policy Statement further clarifies that "extraordinary and compelling reasons" encompasses only small, specific sets of circumstances. U.S.S.G. § 1B1.13, cmt. n.1(A). Namely, there are three recognized circumstances that may facilitate an inmate's early release: "(a) 'a medical condition'—specifically, 'a terminal illness' or a condition that 'substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover'; (b) 'age'—starting at age 65; and (c) 'family circumstances.'" *United States v. Calogero*, No. 18-203, at 4-5 (citation omitted).[1]

---

[1] The Court notes that there is some dispute over whether the Sentencing Commission's Policy Statement remains binding in light of the statutory changes enacted by the First Step Act. *See Dillon v. United States,* 560 U.S. 817, 830 (2010) (holding that the Policy Statement is binding when evaluating sentence reduction requests under Section 3582);

3

Defendant does not provide evidence, nor does he argue, that he fits into any established category that would entitle him to compassionate release. Rather, Defendant argues that the risk of contracting Covid-19 while incarcerated, combined with his medical issues, is sufficient to meet the standard for compassionate release.

In general, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3rd. Cir. 2000). Here, Defendant has provided more than mere generalized concern. It is undisputed that Oakdale, Defendant's place of incarceration, has become a relative hotspot of the Covid-19 epidemic within the BOP. Additionally, the Government agrees that certain chronic underlying conditions, combined with a realistic threat of contracting Covid-19, can be enough to satisfy the medical condition rationale for compassionate release. *See United States v. Jepsen*, No. 3:19-cv-00073(VLB), 2020 WL 1640232 at *4 (D. Conn. Apr. 1, 2020) (granting release based on Covid-19 when defendant was obese and immunocompromised).

The only medical records before the Court have been provided by the Government. (Rec. Doc. 514-3)*; see also United States v. Green*, No. 2:11-cr-00468-

---

*cf. United States v. Perdigao*, No. 2:07-cr-00103 (E.D. La. Apr. 2, 2020) (Doc. No. 237 at 5) (finding that the policy statement is no longer dispositive). The Court finds it is not necessary to decide this issue at this time, as at the very least the Policy Statement remains instructive. *See United States v. LeBlanc,* 2020 WL 2331690 (E.D. La. May 11, 2020); *Perdigao*, No. 07-cr-103 (although not dispositive, the Policy Statement remains instructive.).

4

TLN, 2020 WL 1892456 at *3 (E.D. Ca. Apr. 16, 2020) (holding that BOP medical records provided by the Government supersede Defendant's unsubstantiated claims of health problems). Defendant's medical records show only that he suffers from high cholesterol, Hepatitis C, and nerve pain from a 2009 gunshot wound. (Rec. Doc. 514-3 at 33, 6, and 64). Taken together these conditions do not elevate Defendant's risk of contracting Covid-19 to the level of "extraordinary and compelling."

None of Defendant's medical conditions place him amongst the CDC's high-risk Covid-19 categories.[2] The CDC states people with "serious heart conditions" are high-risk for Covid-19 complications, and Defendant's high cholesterol does not equate to a serious heart condition. *See United States v. Guyton,* No. 11-271 "H" (E.D. La. May 5, 2020) (Milazzo, J.), ECF No. 1570, at 5 (defendant's hypertension did not put him at increased risk for Covid-19). Similarly, inmates with liver disease are at a high-risk for Covid-19, but as Defendant's Hepatitis C is asymptomatic there is no evidence he suffers from liver disease. *See* (Rec. Doc. 514-3 at 6) (describing Defendant as having "chronic asymptomatic Hepatitis C infection.").[3] Finally, Defendant's medical records do not indicate any pulmonary or cardiovascular impairment as a result of his bullet wound. On the contrary, Defendant's medical records reflect someone who is in good cardiovascular health. *See* (Rec. Doc. 514-3 at 6) (Defendant's "pulmonary observation" was "within normal

---

[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.
[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html ("If somebody has good liver function and is asymptomatic for hepatitis C, then at this point we don't know that there should be anything different from those who do not have hepatitis C infection.")

5

limits"); *id.* at 63 (Defendant was negative for respiratory distress and sleep apnea); *id.* at 59 (Defendant had no shortness of breath, coughing, wheezing, chest pain, chest pressure, or chest discomfort). For the foregoing reasons, Defendant has failed to show that "extraordinary and compelling" reasons exist to grant him compassionate release.

Furthermore, even if the Court were to find that the Covid-19 outbreak at Oakdale constituted an extraordinary and compelling reason, Defendant would still not be entitled to compassionate release because he has failed to establish that, if released, he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). The danger posed to the community by drug offenders writ large, and armed drug offenders in particular, is well-established. *See United States v. Hare,* 873 F.2d 796, 798-99 (5th Cir. 1989); *see also United States v. Daychild,* 357 F.3d 1081, 1100 (9th Cir. 2004) (Danger to the community posed by armed drug traffickers is "too plain to permit dispute"). Defendant's PSR indicates that federal agents found firearms when conducting searches of Defendant's home and vehicle. (Rec. Doc. 167 at 3).

Moreover, as mentioned in more detail in the Court's recitation of this matter's factual background, the instant conviction is far from an isolated incident. Defendant has a long and troublesome criminal history, including multiple convictions and arrests on drug and firearm charges. (Rec. Doc. 259 at 92-109). This pattern of conduct evinces a defendant with a strong predilection for dangerous behavior that precludes a granting of compassionate release. *See United States v.*

6

*Miranda*, 2020 WL 2124604 (D. Conn. May 5, 2020) (denying compassionate release for a defendant with history of drug crimes and violence).

Even more troublesome is Defendant's history of wholly disregarding any terms of home confinement or supervised release. Defendant has previously had his supervised release revoked by another Section of this Court after being arrested for unlawful transfer of firearms and aggravated assault while on supervised release. (Rec. 259 at 97); *see United States v. Paulino,* No. 19 Cr. 54 (PGG), 2020 WL 1847914, at *6 (S.D.N.Y. Apr. 13, 2020) (Noting in denying release due to Covid-19 that "in committing the instant crime, the Defendant violated his probation."). Defendant further illustrated his disregard for the terms of supervised release by using cocaine and Vicodin, attempting to falsify urine samples, failing to report to drug treatment, and failing to report to the Probation Office. *See United States v. Marlon Barnes*, 2:02-003 "F," Doc. No. 24. These actions reveal that Defendant is particularly unsuited to serving a large portion of his sentence via probation or supervision.

For the foregoing reasons, Defendant has failed to show that if granted compassionate release he would not be a danger to others or to the community.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion for Compassionate Release* **(Rec. Doc. 496)** is **DENIED**.

New Orleans, Louisiana, this 2nd day of July, 2020.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE